The PRESIDENT
delivered the opinion of the court.
The first point mentioned, tho’ not relied upon was, that equity will not aid on.e volunteer against another, but will leave them to the law, their equity being equal. It is generally true, that this court will not aid a volunteer in supplying legal defects in a prior deed, against a subsequent volunteer. But there are exceptions to this general rule, one of which is, the cases of advancements for younger children otherwise unprovided for, in favor of whom the court will supply such legal defects; the counsel probably considering this as such a case, did not press the'objection; but he insisted, that applicants to this court must come with clean hands and a fair case, as this court will not enforce iniquitous or even hard bargains.
As to the first, the whole proceeded from the father, and if there were any evil in his intentions, it is not to be imputed to the daughter, who was wholly passive, and used no means either fair or otherwise to procure the deed. Nor can it be thought immoral in her to accept the voluntary bounty of her father, securing to her a provision for life. Natural affection imposes upon parents a moral obligation to provide for their children, and it hath been esteemed both in law and in equity a good consideration for supporting such provisions.
*As to the second branch of the objection ; it is true that the court will never decree iniquity, and there are instances, where they have refused to decree hard bargains though fair, but these are rare, and are generally cases of glaring hardship. Eor in general, the court will not undertake to estimate the speculations of parties, in a contract, but will deem them the best judges of their own views, and will compel a performance, though they may be eventually disappointed in their expectations. — As to iniquity the court discovers none in this case, at least on the part of the daughter, and upon the ground of hardship how does it appear? It is suggested, that the father left himself nothing to subsist upon; but the fact is not proved. On the contrary, it being charged in the original bill, that 'he had a considerable estate, he who best knew the truth or falsity of the assertion, does not deny it, nor does he complain of hardship, but rests his de-fence on quite another ground, viz that the promise was conditional, and was broken by the daughter. So that the principles of the objection do not apply to the present case. — If they did, it might be worthy of consideration, whether the present application to restore a deed to its legal force, which it had lost by fraud or accident, is not distinguishable from an application to supply original defects in a deed. The difference seems to be' a strong one, and the court recollect the case of applications to supply defects in bonds against securities, which is constantly refused; yet if a bond in which they are legally bound be lost, the court will not on account of the securities, withhold the usual relief in giving it the same validity as if it were produced. The argument seems a fortiori, that a deed, deprived of its legal force by fraud in the donor, will be restored tho’ in a hard case, the court considering that as undone, which should not have been done; but as I said before, it is unnecessary to decide this point, since the facts do not support the objection.
Two other objections remain to be considered. 1st, That the promise was conditional and broken. As to this, there is no proof..
21y, That there was an implied trust for the father, in case he survived the impending prosecution for felony. Upon this head, the proof is generally derived from the vaunting declarations of the father, that he had secured his estate to his children, that he would face his enemies, and was a proper person to go to law. Mrs. Cotterel is a positive witness, that when he delivered the deed to his daughter, he said, it was not to have ^effect, if his life were saved, and the circumstances stated by the counsel might have weight to induce a presumption of the trust, if there were nothing to *517 encounter them — but there is abundant proof to over-rule both.
1st, The deed was absolute — without trust or condition — if the former could not safely be inserted, the latter might and ought to have been, in order to prevent imposition upon her future husband.
2dly, There were three subscribing witnesses to the deed and a fourth present, who did not subscribe it, all of whom swear, that no mention was made at the time of either trust or condition.
3dly, Mrs. Woodson’s deposition is material — she sa3rs that when Ward was speaking of the condition and trust, he was asked if there were any agreement at the time either verbal or in writing to that purpose, and he answered there was not.
4thly, As to the trust. Ward himself who certainly knew more of the matter than Mrs. Cotterel, does not mention it in his answer — whereas he ought to have relied upon it, if it were true, and ought to have brought a cross bill to discover and establish the trust — He did neither, and upon what .ground can it now be set up?
The decree must be affirmed.